IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JONATHAN OOMRIGAR, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA, a Maine corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:16-CV-940 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on the parties' cross-motions for summary judgment regarding Plaintiff Jonathan Oomrigar's ("Plaintiff") ERISA claim. For the reasons set forth below, the Court will deny Plaintiff's Motion and grant Defendant Unum Life Insurance Company of America's ("Unum") Motion.

I. BACKGROUND

Plaintiff's son, Jal Oomrigar ("Jal"), the insured, was involved in a motor vehicle accident on May 20, 2013. According to the police report, Sergeant Wayne Keith of the Utah County Sheriff's Department observed Jal speeding eastbound on his motorcycle on University Avenue in Orem, Utah. Sergeant Keith turned on his lights to initiate a traffic stop, but observed that Jal "sped up and was weaving in and out of eastbound traffic at a high speed."[1] Sergeant Keith then stopped pursuit. Shortly thereafter, as he continued driving east on University Parkway, Sergeant Keith came upon the scene of the accident.

---

[1] Docket No. 27-2, at 214.

Sergeant Keith was the first officer to arrive at the scene. However, because the accident occurred in Orem City, Officer Kirk Denning of the Orem City Police Department investigated the incident. Witnesses reported that Jal had entered the right shoulder of the roadway where at least one car was stopped, waiting to make a right turn onto State Street. The precise details are unclear, however it seems Jal then lost control of the motorcycle as he attempted to avoid collision with the stopped vehicle and was thrown from the motorcycle onto the pavement. Paramedics treated Jal at the scene of the accident and then transported him to Utah Valley Regional Medical Center where, tragically, he passed away as a result of blunt force injuries sustained in the accident.

At the time of the accident, Jal was employed by SolarWinds Worldwide, LLC ("SolarWinds"). During his employment, Jal elected to enroll in the SolarWinds Worldwide, LLC Plan ("the Plan"), which was administered by Unum. The Plan provided Jal with a life benefit and an accidental death and dismemberment ("AD&D") benefit. For purposes of these cross-motions for summary judgment, the Court is concerned only with the AD&D benefit.

The Plan provides that the AD&D benefit will issue "only if an accidental bodily injury results."[2] The Plan defines "accidental bodily injury" as "bodily harm caused solely by external, violent, and accidental means and not contributed to by any other cause."[3] The Plan further provides certain exceptions to the coverage. Relevant here, the Plan provides that "any accidental losses caused by, contributed to by, or resulting from . . . an attempt to commit or commission of

---

[2] Docket No. 27-1, at 33.
[3] *Id.* at 40.

a crime" will not be covered.[4] The Plan grants Unum discretionary authority to make benefit determinations, which includes "determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan."[5]

On July 23, 2013, SolarWinds submitted a claim to Unum under the life and AD&D provisions of the Plan. Plaintiff, as Jal's beneficiary, initiated contact with Unum on July 29, 2013. Unum requested that Plaintiff submit certain information to Unum, which was eventually provided. An Unum representative, Ms. Carol Dunham, thereafter investigated the circumstances surrounding the accident to determine if Jal would have been charged with a crime had he survived.

Based on all the information provided by Plaintiff and the information collected by Ms. Dunham, Unum ultimately determined that it would issue the life benefit, but would not issue the AD&D benefit. Unum found that Jal was driving recklessly, evading an officer, and speeding and/or going too fast for the conditions in violation of Utah law. Therefore, Unum denied the benefit because Jal's death "was caused by, contributed to by, or result[ed] from . . . an attempt to commit or commission of a crime."[6] Unum informed Plaintiff of the denial on February 6, 2014.

Plaintiff appealed the decision. Unum found the initial decision to deny the AD&D benefit was correct. Plaintiff thereafter filed an ERISA claim in this Court.

---

[4] Docket No. 27-2, at 72.
[5] Docket No. 27-1, at 51.
[6] Docket No. 27-2, at 72.

## II. STANDARD OF REVIEW

ERISA allows an individual participant of an employee benefit plan, or their beneficiaries, to sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of [his] plan."[7]

Where a plan grants discretionary authority to the plan administrator, courts "employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious."[8] It is undisputed that the Plan grants Unum discretionary authority and that an arbitrary and capricious standard of review is applicable here. "Under the arbitrary and capricious standard, [courts] curtail [their] review, asking only whether the interpretation of the plan was reasonable and made in good faith."[9] "The Administrators' decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within their knowledge to counter a claim that it was arbitrary or capricious."[10] The court therefore "need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end."[11] To determine if a decision falls somewhere on a continuum of reasonableness, courts look for "'substantial evidence' in the record to support the

---

[7] 29 U.S.C. § 1132(a)(1)(B).

[8] *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (citation and internal quotation marks omitted).

[9] *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (citation and internal quotation marks omitted).

[10] *Woolsey v. Marion Labs., Inc.,* 934 F.2d 1452, 1460 (10th Cir. 1991).

[11] *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (citing *Vega v. Nat'l Life Ins. Serv., Inc.,* 188 F.3d 287, 297 (5th Cir. 1999)).

administrator's conclusion, meaning 'more than a scintilla' of evidence 'that a reasonable mind could accept as sufficient to support a conclusion.'"[12]

Furthermore, a district court's review of an ERISA case involves the consideration of "several different, often case-specific, factors, reaching a result by weighing all together."[13] One of the factors, relevant in this matter, is an administrator's conflict of interest between its own financial interest and the interests of the plan participants. Courts "dial back [their] deference if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest."[14] "To incorporate this factor, [the Tenth Circuit has] 'crafted a sliding scale approach' where the 'reviewing court will always apply an arbitrary and capricious standard, but will decrease the level of deference given . . . in proportion to the seriousness of the conflict.'"[15]

### III. DISCUSSION

Unum denied the AD&D benefit based on the crime exclusion stated in the Plan. Unum found that the record supported that Jal was speeding, evading a police officer, and driving recklessly in violation of Utah's traffic laws, each, of which constitute a "crime" under Unum's interpretation of the language of the Plan. Plaintiff argues the record does not support that Jal was driving recklessly or evading a police officer, but only that he might have been charged with driving too fast for the conditions and/or speeding, which he argues does not constitute a "crime" under a reasonable interpretation of the Plan.

---

[12] *Eugene S.*, 663 F.3d at 1134 (citation and internal quotation marks omitted).

[13] *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1193 (10th Cir. 2009) (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008)).

[14] *Weber*, 541 F.3d at 1010 (citation and internal quotation marks omitted).

[15] *Id.* (quoting *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.,* 491 F.3d 1180, 1190 (10th Cir. 2007)).

*a. Deference Afforded to Unum*

As both the payor of the benefit and the plan administrator, it is undisputed that Unum operated with a conflict of interest in this case. As previously discussed, "if a conflict of interest exists, the reviewing court 'must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict.'"[16] Plaintiff argues that, based on the conflict, deference afforded to Unum should be significantly decreased because "Unum failed to apply its own policy terms to the analysis and relied almost exclusively on hearsay as the basis for concluding that Jal committed a 'crime' when his motorcycle crashed, ignoring indications that the foundation for that conclusion should be questioned."[17]

Given Unum's position as both the administrator and payor, the Court will weigh Unum's conflict of interest "as a factor in determining the lawfulness of the benefits denial," but will still apply the arbitrary and capricious standard.[18] Plaintiff has not pointed to any conduct that merits a more significant decrease in the deference given to Unum's decision.

*b. The Administrative Record*

The Court's review of the administrative decision is strictly limited to "the rationale asserted by the plan administrator in the administrative record."[19] In its decision upholding the denial of the AD&D benefit, Unum cited to Officer Denning's report of the accident and the information collected by Ms. Dunham's investigation. Officer Denning's police report stated that

---

[16] *Caldwell v. Lite Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002) (quoting *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996)).

[17] Docket No. 25. at 13.

[18] *Weber*, 541 F.3d at 1011.

[19] *Id.* (quoting *Flinders*, 491 F.3d at 1190).

Sergeant Keith attempted to initiate a traffic stop on a motorcyclist that was speeding eastbound on University Parkway, but that the motorcyclist "sped up and was weaving in and out of traffic as he approached State Street."[20]

The witness reports contained in Officer Denning's report further support that Jal was operating his motorcycle in an unsafe manner. Five of the witnesses accounted that the motorcyclist appeared to be speeding and five also stated that he was weaving in and out of lanes, not obeying traffic laws, and/or driving on the dotted line between the cars.[21] One witness stated that "[t]he motorcyclist flew by—'meaning was speeding'— . . . [and was] not obeying traffic laws."[22] Another witness recalled, they "saw a motorcyclist zoom past [their] vehicle on the left side. He was moving between the cars going at least twice as fast as everyone else."[23] Another witness stated that they were passed by a motorcyclist who "proceeded to weave between the cars and ignore[] the lanes. As he approached the intersection . . . he lost control of his bike and flew over the handlebars."[24] Finally, Officer Denning's report states that the motorcycle was impounded by Utah County for "evading deputy."[25]

In making its final determination, Unum also relied on the information obtained in Ms. Dunham's investigative phone calls. Ms. Dunham first spoke with Sergeant Baily of the Orem Police Department who informed Ms. Dunham that the Orem Police were only called to the

---

[20] Docket No. 27-2 at 214.

[21] *Id.* at 162–67.

[22] *Id.* at 162.

[23] *Id.* at 166.

[24] *Id.* at 165.

[25] *Id.* at 214.

scene of the accident because the accident occurred in their jurisdiction.[26] He therefore advised that, because Sergeant Keith of the Utah County Sheriff's Department was the officer in pursuit of Jal prior to the accident, the Sheriff's office would be the one to file charges.[27] Based on this information, Ms. Dunham sought to contact Sergeant Keith. Ms. Dunham left numerous messages with Sergeant Keith, but was unable to speak with him directly. Finally, the Sheriff's office advised her that Sergeant Keith received her messages and contacted the county attorney's office about Ms. Dunham's inquiry.[28] Relying on this information, Ms. Dunham contacted the county attorney's office directly and eventually spoke to a representative named Court Griffin, who, upon investigation, reported to Ms. Dunham that he spoke with Sergeant Keith and an unidentified detective and that the detective relayed that he would have referred charges for reckless driving and evading a police officer if Jal had survived the accident.[29] Reckless driving is a class B misdemeanor under Utah law and evading a police officer is a third-degree felony.[30] Based on this information, Unum denied the claim.

Sometime after the initial claim denial, Officer Denning of the Orem City Police Department returned a call to Ms. Dunham and left a message stating that, "if anything," Jal would have only been charged with speeding and/or going too fast for the conditions.[31]

---

[26] *Id.* at 363.

[27] *Id.*

[28] *Id.* at 364.

[29] *Id.* at 366.

[30] Utah Code Ann. § 41-6a-528(1)-(2); *Id*. § 41-6a-210.

[31] Docket No. 27-2, at 407.

Taking Officer Denning's message into account on appeal, Unum still found that the evidence showed that Jal was speeding, evading a police officer, and driving recklessly in violation of Utah law, and was therefore in the commission of a crime that caused, contributed to, or resulted in his death. Plaintiff argues this is an arbitrary and capricious conclusion.

*c. Unum's Construction of the Facts*

Drawing from Officer Denning's police report and Ms. Dunham's conversations with Court Griffin and Sergeant Bailey, Unum found that Jal would have been charged with evading a police officer and reckless driving. Plaintiff argues Unum's findings are flawed because the record contains conflicting evidence. Namely, Officer Denning's voicemail stating that Jal may have been charged with driving too fast for the conditions or speed in general, "if anything."

The record contains substantial evidence supporting Unum's finding that Jal was evading a police officer and driving recklessly. Officer Denning's police report stated that Jal "sped up and was weaving in and out of eastbound traffic at a high speed"[32] after Sergeant Keith attempted to initiate a stop, and that Jal's motorcycle was impounded for "evading deputy." The report also included six witness statements supporting that Jal was operating his motorcycle in an unsafe manner. Finally, Mr. Griffin from the county attorney's office stated that, based on his conversations with Sergeant Keith and the investigating detective, Jal would have been charged with reckless driving and evading an officer. Taken collectively, the record provides more than a scintilla of evidence to support Unum's findings. Though Officer Denning's voicemail does provide a conflicting statement of the facts, it is not sufficient to invalidate all of the opposing evidence. This is especially true considering Sergeant Bailey's statement that all charges would

---

[32] *Id.* at 214.

have been referred to the Utah County Sheriff's Department, which the record supports would have issued charges for reckless driving and evading a police officer.

Plaintiff also argues that Unum cited no evidence on the record to support that Jal's alleged criminal activity caused or contributed to his death, as required by the language in the Plan. As discussed, the record supports that Jal was driving his motorcycle at a high speed and in an otherwise unsafe manner just prior to the accident. Nothing in the record supports that some intervening factor was the true cause of the accident. It therefore stands to reason that Jal's driving at a high rate of speed or in an otherwise unsafe manner caused, or, at a minimum, contributed to the accident. Therefore, Unum's denial of the AD&D benefit is supported by substantial evidence.

### d. Unum's Interpretation of the Crime Exclusion

Where the interpretation of an ERISA plan's term is at issue, "the arbitrary and capricious review encompasses the contract law standard of ambiguity."[33] In determining whether a plan's language is ambiguous, the language "must be given 'its common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words to mean.'"[34] "A decision denying benefits based on an interpretation of an ERISA provision survives arbitrary and capricious review so long as the interpretation is reasonable."[35] If the term is susceptible to two or more reasonable interpretations, and "the plan administrator

---

[33] *Flinders*, 491 F.3d at 1193.

[34] *Id.* (quoting *Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1212 (10th Cir. 2002)).

[35] *Id.* at 1193.

adopts one of two or more reasonable interpretations, then the plan administrator's decision to deny benefits based on that interpretation survives arbitrary and capricious review."[36]

Here, the Plan provides that "any accidental losses caused by, contributed to by, or resulting from . . . an attempt to commit or commission of a crime" will not be covered by the AD&D benefit.[37] The Plan does not define the term "crime." Unum relied on the Merriam-Webster Dictionary to define the term as meaning "an illegal act for which someone can be punished by the government; an activity that is against the law; illegal acts in general."[38] Unum argues that under this definition, speeding and/or going too fast for the conditions, reckless driving, and evading a police officer each constitute a "crime" that disallows the issuance of the AD&D benefit. Plaintiff argues that the only reasonable reading of the Plan is to construe "crime" as referring "to a criminal charge that was classified as a misdemeanor or a felony – one that involves some level of moral turpitude," and not a minor traffic infraction such as speeding.[39]

Reckless driving and evading a police officer are both chargeable as a misdemeanor or felony, respectively, in Utah.[40] As discussed, the record supports that Jal was engaged in reckless driving and evading a police officer just prior to his accident. Therefore, even under Plaintiff's definition of "crime," denial of the AD&D benefit was proper.

---

[36] *Id.*

[37] Docket No. 27-2, at 72.

[38] *Id*. 27-2, at 428–29.

[39] Docket No. 25, at 16.

[40] Utah Code Ann. § 41-6a-528(1)-(2); *Id*. § 41-6a-210.

Assuming, for the sake of argument, that the record did not support that Jal engaged in reckless driving or evading a police officer, Unum's interpretation of the term to encompass speeding and/or going too fast for the conditions is reasonable. Unum's reliance on the Merriam-Webster Dictionary to define the term "crime" is consistent with courts' methods of discerning the common and ordinary usage of a term.[41] Additionally, Unum's interpretation is consistent with both other courts' and secondary authorities' definitions of crime.[42] Unum's interpretation is therefore reasonable.

Unum defined crime, in part, as "an illegal act for which someone can be punished by the government."[43] Driving too fast for the conditions and speeding are both punishable by fine under Utah law.[44] Speeding and/or driving too fast for the conditions therefore reasonably fall under Unum's reasonable interpretation of the term "crime."

---

[41] *United States v. Roberts*, 88 F.3d 872, 877 (10th Cir. 1996); *see also Fruitt v. Astrue*, 604 F.3d 1217, 1220 (10th Cir. 2010) ("If the words of the statute have a plain and ordinary meaning, we apply the text as written. We may consult a dictionary to determine the plain meaning of a term.").

[42] *See e.g.*, *United States v. Grier*, 475 F.3d 556, 562 (3d Cir. 2007) ("A crime is defined as conduct that is punishable by the state. Conduct is punishable by the state when it exposes the individual to new or additional penalties."); *Bohner v. Burwell*, No. CV 15-4088, 2016 WL 8716339, at *8 (E.D. Pa. Dec. 2, 2016) ("[A] crime is defined as an *act* that the law makes punishable."); *Redux, Ltd. v. Commercial Union Ins. Co.*, No. 94-2144-JWL, 1995 WL 88251, at *1 (D. Kan. Feb. 7, 1995) ("The plain and ordinary meaning of the term is something more than a crime for which there has been a conviction or entry of a guilty plea. A 'crime' is defined as the 'commission of an act that is forbidden or the omission of a duty that is required by law' and can refer generally to 'wrongdoing.'"); *Crime*, *Black's Law Dictionary* (10th ed. 2014) (defining crime as "[a]n act that the law makes punishable; the breach of a legal duty treated as the subject-matter of a criminal proceeding").

[43] Docket No. 27-2, at 428–29.

[44] The Utah Code prohibits a person from "operat[ing] a vehicle at a speed greater than is reasonable and prudent under the existing conditions, giving regard to the actual and potential hazards then existing." Utah Code Ann. § 41-6a-601(1). A violation of this section is an infraction. *Id.* § 41-6a-601(4).

Because Unum's factual findings are supported by the record and because Unum's interpretation of the term "crime" is reasonable, the Court finds that Unum's decision to deny the AD&D benefit was not arbitrary and capricious and will therefore grant summary judgment in favor of Defendant Unum.

*e. Attorney's Fees*

Plaintiff requests an award of reasonable attorney's fees and court costs pursuant to 29 U.S.C. § 1132(g)(1). Because Plaintiff is not the prevailing party in this matter, the Court will deny Plaintiff's request.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant Unum's Motion for Summary Judgment (Docket No. 26) is GRANTED and Plaintiff Jonathan Oomrigar's Motion for Summary Judgment (Docket No. 25) is DENIED.

DATED this 6th day of September, 2017.

BY THE COURT:

Ted Stewart
United States District Judge